IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Korell Battle, Darnell Brown, Jeffrey Brown, Ronnie Drake, Lance Myles, John Mack, and Jabari Moore, <br><br> Plaintiffs, <br><br> v. <br><br> South Carolina Department of Corrections, Warden Cecilia Reynolds, individually and in her official capacity as Warden of Lee Correctional Institution, and Warden Aaron Joyner, individually and in his official capacity as Warden of Lee Correctional Institution, <br><br> Defendants. | C/A No. 2:18-cv-719-TMC <br><br> **ORDER** |

Plaintiffs Korell Battle, Darnell Brown, Jeffrey Brown,[1] Ronnie Drake, Lance Myles, John Mack, and Jabari Moore, state prisoners represented by counsel, filed this action alleging that while Plaintiffs were housed at the Lee Correctional Institution ("LCI") they were assaulted by other inmates and asserting failure to protect claims against Defendants South Carolina Department of Corrections ("SCDC"), Warden Cecilia Reynolds, and Warden Aaron Joyner pursuant to 42 U.S.C. § 1983 and state law. (ECF No. 21).[2] In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02, D.S.C., this matter was referred to a magistrate judge for pretrial handling. Defendants filed a motion to sever (ECF No. 23) and a motion for summary

---

[1]Jeffrey Brown's first name is spelled in different ways in the record. *Compare, e.g.* ECF Nos. 77, 79 with ECF Nos. 21 , 34-7. The Amended Compliant lists his first name as Jeffrey as does his affidavit. (ECF Nos. 21, 34-7). Accordingly, the court has used that spelling throughout this order.

[2]This action was originally filed in state court and removed by Defendants to this court. (ECF No. 1). Plaintiffs subsequently filed an amended complaint. (ECF No. 21).

judgment alleging that Plaintiffs did not exhaust their administrative remedies (ECF No. 24). Plaintiffs filed responses opposing the motions (ECF Nos. 28, 34), and Defendants filed replies (ECF Nos. 38, 49, 56). On September 25, 2018, the magistrate judge held a telephone conference on whether Plaintiffs had exhausted their administrative remedies. (ECF Nos. 52, 55). Before the court is the magistrate judge's Order and Report and Recommendation ("Report") recommending that the court deny Defendants' summary judgment motion as to Plaintiffs Battle, Darnell Brown, Jeffrey Brown, Drake, Lyles, and Mack, and that discovery on exhaustion be allowed as to Plaintiff Moore (ECF No. 24). (ECF No. 57 at 36). Subsequently, the parties communicated to the magistrate judge that no further briefing was needed as to Moore because "it appears that there is no further evidence that would support finding that Mr. Moore's administrative remedies were unavailable. . . . " (ECF No. 66). Therefore, in a docket text entry, the magistrate judge recommended that the court grant Defendants' summary judgment as to Plaintiff Moore for failure to exhaust his administrative remedies and dismiss Moore's claims without prejudice. *Id.*

In her Report, the magistrate judge also denied Defendants' motion to sever (ECF No. 23). (ECF No. 57 at 34-35).[3] On January 9, 2019, the court entered a text order asking the parties to show cause as to why the court should not sever the claims. (ECF No. 78). The parties timely filed responses. (ECF Nos. 79 and 80).

## II. Applicable Law

Summary judgment is appropriate only "if the movant shows that there is no genuine

---

[3]The Report has no presumptive weight and the responsibility to make a final determination in this matter remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In that case, the court reviews the Report only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005)

dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Monahan v. Cnty. of Chesterfield*, 95 F.3d 1263, 1265 (4th Cir. 1996).

### III. Discussion

Plaintiffs were all victims of assaults by other inmates while housed at LCI.[4] Plaintiffs allege Defendants failed to protect them from the other inmates. In their Amended Complaint, Plaintiffs allege causes of action for: 1) temporary and permanent injunctive relief; 2) claims pursuant to 42 U.S.C. §1983; and 3) violations of the South Carolina Torts Claims Act - specifically alleging "a separate cause of action for each named Plaintiff and each separate incident set forth herein above." (ECF No. 21 at 9-13).[5]

As an initial matter, as stated above, the magistrate judge recommends that the court

---

[4]Plaintiff Battle is currently being housed at Broad River Correctional Institution. Plaintiff Darnell Brown is currently being housed at McCormick Correctional Institution. Plaintiff Jeffrey Brown is currently being housed at Ridgeland Correctional Institution. Plaintiffs Drake, Lyles, and Mack continue to be housed at LCI. (ECF No. 21 at 2, 21).

[5]The court notes that an injunction is a form of relief and not an independent cause of action. *See Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005) (holding that "an injunction is a type of relief rather than an independent cause of action."); *see also In re Bldg. Materials Corp. of Am. Shingle Prods. Liab. Litig.*, MDL No. 8:11-mm-02000-JMC, No. 8:11-cvv-02785-JMC, 2013 WL 139520, *13 (D.S.C. Jan. 10, 2013).

3

grant Defendants's summary judgment as to Plaintiff Moore. (ECF No. 66). Neither party has filed any objections to this recommendation.[6] Accordingly, finding no clear error, the court adopts this part of the Report, grants summary judgment to Defendants on Moore's § 1983 claims, and remands Moore's state law claims to state court.

**A. Exhaustion**

The Prison Litigation Reform Act ("PLRA") mandates that an inmate exhaust "such administrative remedies as are available" before bringing suit under § 1983. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Moreover, exhaustion is required even when a prisoner seeks remedies, such as money damages, that are not available in the administrative proceedings. *See Booth v. Churner*, 532 U.S. 731, 740-41 (2001). To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review, which means "using all steps that the agency holds out, and doing so properly." *Woodford v. Ngo*, 548 U.S. 81, 9106) (internal quotation marks and citation omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."

---

[6]In their Reply to Defendants' Objections, Plaintiffs state that "Moore is not part of this opposition." (ECF No. 77 at 2 n.1). Further, in their response to the court's text order about severance, Plaintiffs state that the magistrate judge recommends that summary judgment be granted on Moore's claims and, if the court adopts the Report, Moore's state law claims will be remanded to state court, and he will no longer be included in this action. (ECF No. 79 at 1 n.1). Nowhere in Plaintiffs' filings does Moore object to the magistrate judge's recommendation that summary judgment be granted as to his § 1983 claims.

*Id.* "An inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant." *Anderson v. XYZ Corr. Health Servs.*, 407 F.3d 674, 683 (4th Cir. 2005).

The administrative remedies are dictated by the prison. *See Jones v. Bock*, 549 U.S. 199, 218 (2007). The parties agree that SCDC grievance procedure is as follows. An inmate seeking to complain of prison conditions must first attempt to informally resolve the complaint within eight working days of the incident by filing a Request to Staff Member form. (ECF Nos. 24-9 at 7; 34-1 at 7 ). Informal resolution is not required, however, when the matter involves allegations of criminal activity. *Id.* With respect to criminal activity complaints, the inmate must file a Step 1 grievance within five working days of the incident. *Id.* If the inmate's complaint is not resolved by the Request to Staff Member, an inmate must file a Step 1 grievance within five working days of receiving a response. *Id.* If an informal resolution is not possible, an inmate must file a Step 1 Grievance with prison staff within five working days of the incident. *Id.* If an inmate is not satisfied with the Step 1 response, he may appeal the Step 1 decision by filing a Step 2 grievance with the warden. *Id.* at 9.

In her Report, the magistrate judge determines that Plaintiffs' failure to exhaust was not apparent from the face of the Amended Complaint (ECF No. 57 at 4), and she then addresses each Plaintiffs' claims and analyzes whether Defendants are entitled to summary judgment based on failure to exhaust, *id.* at 9-30. It is undisputed that Plaintiffs Drake, Jeffrey Brown, and Darnell Brown did not submit any grievances regarding their assaults. (ECF No. 57 at 9). In response to Defendants' summary judgment motion, these Plaintiffs submitted affidavits in which they aver that they were threatened and told not to file any grievances, and/or they did not file any grievances because they feared retaliation. (ECF Nos. 34-5 at 3-4; 34-7 at 2-3; 34-9 at 2-3). In reply, Defendants contend that the court should disregard these conclusory and self-serving affidavits. (ECF No. 49 at 20). Further, Defendants argue that the actions of these

Plaintiffs belies their averments because these Plaintiffs have filed numerous grievances and are prolific users of the SCDC grievance system. *Id*. at 4, 5, 7, 19, 22. As to these Plaintiffs, the magistrate judge "finds that these Plaintiffs have shown the administrative remedy procedure was not available to them" and that the "fear of retaliation was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance." (ECF No. 57 at 12). In conclusion, she finds that "these Plaintiffs' claims should be deemed exhausted and denies summary judgment as to their claims." *Id.* at 13.

As to Plaintiff Battle, it is undisputed that he filed grievances following his assault. (ECF No. 57 at 15). Defendants, however, argue that Battle's grievances did not encompass the claims he is now raising. (ECF No. 49 at 15). On January 4, 2017, Battle submitted a Step 1 grievance stating: "I was in bed asleep, staff unlocked door without permission and 10 guys attacked me and almost kill me" and "[i]f [LCI] would have had doorknobs, no way them guys could have ran up in my room." (ECF No. 34-10 at 3). The Associate Warden responded that the maintenance supervisor advised that doorknobs were once used when inmates had keys to their cells, but currently there are no doorknobs in any SCDC prison. *Id.* Battle then filed a Step 2 grievance asserting that other prisons do have doorknobs because he has spoken to other inmates who say there are still doorknobs in SCDC prisons. *Id.* Battle asserted that if one prison has doorknobs, all prison should have doorknobs. *Id*. The Associate Warden responded that the agency found it was cost effective to remove doorknobs and key locks from all cell doors Agency-wide. *Id.* Defendants contend that Battle successfully exhausted his administrative remedies on the use of doorknobs in the prisons. (ECF NO. 49 at 15). However, they argue that Battle did not exhaust his administrative remedies regarding his failure to protect claim. *Id.*

In response to Defendants' summary judgment motion, Battle submitted an affidavit in which he avers that he believed he could not seek money damages in a grievance, "so [he] made the statement in [his] grievance that [he] thought doorknobs on the cell door would have helped

prevent the attack on [him]" and that, in response, SCDC failed to address the underlying problem, which was that a correctional officer had unlocked his cell door to let his attackers into his cell. (ECF No. 43 at 2-3). He also states that he believes the grievances he filed were not kept confidential by correctional officers and, as a result, he was attacked a second time by other inmates after a transfer to McCormick Correctional Institution several months later. *Id.* at 2. In her Report, the magistrate judge finds that Battles's grievances satisfies the exhaustion requirement, *id.* at 17, and, alternatively, she finds the prison grievance system was a dead end rendering the administrative remedies unavailable for Battle, *id.* at 18. She concludes that "Battle's claims should be deemed exhausted and denies summary judgment as to his claims. *Id.* at 19.

As to Plaintiff Mack, it is undisputed that he filed grievances (ECF No. 57 at 19), but Defendants contend that they were untimely and unrelated to the claims that he is now alleging (ECF No. 49 at 8, 19). In reply, Mack submitted an affidavit in which he avers that a correctional officer told him that there would be repercussions if he filed a grievance. (ECF No. 34-13 at 2). Mack states that he believed this was a threat and that he could be hurt or killed if he filed a grievance. *Id.* Mack avers that he subsequently filed a Step 1 grievance about the assault after the officer filed an untruthful incident report about the assault. *Id.* This grievance was deemed untimely and returned unprocessed. *Id.* The magistrate judge "finds that John Mack has shown the administrative remedy procedure was not available to him" because he feared repercussions, *id.* at 21, and, alternatively, she finds the administrative remedies were a dead end and deems them unavailable, *id.* at 22. She concludes that "Mack's claims should be deemed exhausted and denies summary judgment as to his claims." *Id.* at 22.

As to Plaintiff Lyles, it is undisputed that he filed grievances regarding his attack. (ECF No. 57 at 23). He contends that he submitted a Request to Staff, and, after receiving no response (ECF No. 34-17 at 2-3), he filed a Step 1 grievance in which he stated the following:

7

> On February 9, 2016, I was assaulted in my cell F1 2154 by another inmate(s). I was hit in my left eye with a [sp] medal object. I was bleeding [sp] instantaneously nonstop. Officer Ocean was working the F1 A unit when it happened. My door was left open they was supposed to be locked. Different and multiple inmates was in my cell while I was being assaulted. Ocean did not report the incident when it happened. Later that night when 2nd shift arrived, I laid halfway knocked out and the night officers did not take me to medical either. The following day, February 10, unit Lt. Scott & Capt. Richardson took me to medical to be examined. I told them both I had been assaulted. Dr. Pate stated my health conditions were fine and all I needed for my eye was liquid glue. He also deprived me of a technical shot as well. My eye was still bleeding severely. Around 12am February 11, Sgt. Lucky came to my cell and packed me up and escorted me to medical. I arrived at Toumey around 3 am. Catscan said I have multiple injuries included fractures in my left eye and side of face. Action Requested by plaintiff: SCDC, Medical staff, unit wing staff to be held accountable for negligence and failure to protect.

(ECF No. 49-5 at 5). The warden responded as follows:

> Your grievance alleging that Ofc. Ocean left the door opened and you were assaulted was forwarded to the Office of Inspector General Police for review. You gave a different story to Medical telling them you were injured during a basketball game when you were elbowed in the eye. Therefore, PS will not be opening a case on this incident. Your grievance is denied. If not satisfied with my response, see Step 5 below. You have the opportunity to appeal to appropriate official. Complete the Step 2 Grievance form and submit to IGC within 5 days.

*Id.* at 5-6. Lyles then filed a Step 2 grievance stating:

> I did not receive proper medical treatment when I went to medical to be examined by staff. They release me back to general population to the same unit that incident took place in. On February 10 is when I receive the first visit to medical. Almost 24 hrs after the assault took place (February 9, 2016). On February 11, 2016 around 2-3am, I was transported to Tuomey hospital for injury. Tuomey performed CAT Scan test and results show there are fractures in my face was caused by metal weapon striking. After returning from hospital, I was placed on RHU at Lee because of assault and victimized. Photographs while at medical showed I was assaulted. Being that I was deprived medical treatment for the first 24 hrs has initiated interior nerve damage to my mouth as well. I'm currently receiving access evaluation for injury.

*Id.* at 6. On August 8, 2016, Lyles received a response to his Step 2 grievance stating:

> Your concern has been reviewed. You stated in this grievance that on February 9, 2016 you were assaulted in your cell by another inmate. You stated you were hit the eye with a metal object. Your grievance was forwarded to Police Services for review. It was determined that no investigation was warranted. I have review your medical encounter #92 dated February 10, 2016. During this visit to medical, you

8

> stated to medical staff that you were playing basketball and caught an elbow to your right eye. Medical staff examined you and determined that your right eye was swollen shut and cuts beneath your right eye and your right eyelid. You were treated appropriately for your injuries that you sustained. You have not provided any evidence of negligent on the part of SCDC. Without verifiable evidence, further action is unwarranted. Therefore, your grievance is denied.
>
> You may appeal this decision under the Administrative Procedures Act to the Administrative Law Court within 30 days.

*Id.*. Lyles contends that he filed an appeal to the administrative law judge after his Step 2 grievance was denied. (ECF No. 34-17 at 3). He also states that "[t]he reason given for the denial of [the] grievance was that [he] didn't attach the Request to Staff form but [he] could not attach a document that was not answered and returned to [him] by SCDC." *Id.*

Defendants now argue that the Step 2 grievance "centered solely on [Lyles'] alleged improper medical care." (Dkt. No. 49 at 13.) As a result, Defendants contend that "Lyles successfully completed and submitted timely grievances in this instance," but he failed to exhaust his administrative remedies regarding his failure to protect claim. *Id.* In her Report, the magistrate judge determines that Lyles's grievance "satisfies the exhaustion requirement." *Id.* at 26. Alternatively, she "finds that Lyles's claims should be deemed exhausted and denies summary judgment as to his claims." *Id.*

In their objections, Defendants contend that the magistrate judge erred by not holding a hearing to determine the disputed issues of fact regarding exhaustion. (ECF No. 68 at 4). Defendants argue that the magistrate judge erred by accepting as true all of Plaintiffs' affidavits when deciding the exhaustion issue on the merits and by denying Defendants' request for an evidentiary hearing. *Id.* at 4-7, 12, 22, 25, 28. In their objections, Defendants request an evidentiary hearing. *Id.* at 18, 28. Plaintiffs oppose Defendants' request for a hearing because they contend that the facts relating to whether they exhausted their claims are intertwined with the merits of their § 1983 claims. (ECF No. 77 at 3, 6-11). Defendants also argue that they have

a Seventh Amendment right to a jury trial on these issues. *Id.* Finally, Defendants contend that the magistrate judge did not make any factual findings on the merits. *Id.* at 12.

The court notes that Defendants do not argue that their summary judgment motion should have been granted. Instead, they argue that the magistrate judge should not have decided the exhaustion issue and that a hearing is necessary. Viewing the evidence in a light most favorable to Plaintiffs, the court finds that genuine issues of material fact remain as to whether the Plaintiffs' administrative remedies were exhausted. Because there remain issues of fact as to whether Plaintiffs exhausted their claims, the court denies Defendants' summary judgment motion.[7] Accordingly, the court declines to adopt the parts of the Report that deem exhaustion to be satisfied or unavailable.

Turning to whether an evidentiary hearing should be held or whether a jury should determine the exhaustion issue, the court notes that the Fourth Circuit Court of Appeals recently stated that "judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." *Woodhouse v. Duncan*, 741 Fed. App'x 177, 178 (citing *Small v. Camden Cnty.*, 728 F.3d 265, 271 (3d Cir. 2013)).[8] Accordingly, the court agrees with

---

[7]While their summary judgment motion was pending before the magistrate judge, Defendants requested that the magistrate judge stay the scheduling order deadlines until there was a final adjudication of the exhaustion issues. (ECF No. 46). The magistrate judge noted that Defendants, citing a Seventh Circuit Court of Appeals' opinion, appeared to be arguing that an evidentiary hearing would be necessary to resolve the exhaustion issue. (ECF No. 57 at 30-31). The magistrate judge stated that in the Fourth Circuit district courts "have denied motions for summary judgment on exhaustion grounds without conducting an evidentiary hearing." (ECF No. 57 at 31). The magistrate judge then denied Defendants' motion for a stay and noted that "the exhaustion issue has been largely resolved." (ECF No. 57 at 32). The court disagrees. When a court denies a summary judgment motion raising the failure to exhaust, the court finds that there is genuine issue of material fact as to exhaustion, and the exhaustion issue has not been resolved. Moreover, the court also notes that the issues were not resolved as the magistrate judge did not rule on the motion, but rather recommended that the district court deny the summary judgment motion.

[8]Likewise, the Second, Third, Fifth, Seventh, Ninth, and Eleventh Circuits have held that a plaintiff in a lawsuit governed by the PLRA is not entitled to a jury trial on the issue of

Defendants that a judge should decide the exhaustion issue.

As to Plaintiffs' assertion that the factual disputes concerning exhaustion are intertwined with the merits of their underlying claims, the court finds there is no intertwining between exhaustion and the underlying claims. In this case, the ultimate issue is whether Defendants violated the Eighth and Fourteenth Amendments by failing to protect Plaintiffs from assaults by other inmates. For the court to make a determination as to whether Plaintiffs exhausted their claims, the court would not necessarily have to determine whether Plaintiffs were assaulted by other inmates due to Defendants' actions or inactions.

> The existence of common factual issues is to be distinguished from the existence of overlapping evidence. For purposes of the Seventh Amendment, the question is whether factual issues overlap, thus requiring one trier-of-fact to decide a disputed issue that must be decided by a subsequent jury, not whether the two fact-finders will merely have to consider similar evidence in deciding distinct issues.

*Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 423 n.21 (5th Cir. 1998). The court finds that the exhaustion issues here are not intertwined with the merits of Plaintiffs' failure to protect claims. Therefore, the court concludes that the exhaustion issue here should be determined by the judge before a jury trial.

Typically, the judge should make this determination early on in the litigation after discovery on only the exhaustion issue has taken place. *See Pavey*, 544 F.3d at 742 (holding that "in the ordinary case discovery with respect to the merits should be deferred until the issue of exhaustion is resolved. If merits discovery is allowed to begin before that resolution, the statutory goal of sparing federal courts the burden of prisoner litigation until and unless the

---

exhaustion. *See Small*, 728 F.3d at 271*; Messa v. Goord*, 652 F.3d 305, 308-09 (2d Cir. 2011); *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010); *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); *Bryant v. Rich*, 530 F.3d 1368, 1373-77 (11th Cir. 2008); *Wyatt v. Terhune*, 315 F.3d 1108, 1119-20 (9th Cir. 2003).

prisoner has exhausted his administrative remedies will not be achieved."). Here, however, the deadline to complete discovery is March 11, 2019. (ECF No. 73). At this point in the litigation, with the discovery all but complete, the court does not believe that the issue of exhaustion needs to be addressed at this time. However, if this action survives summary judgment on the merits, the undersigned will decide the exhaustion issue prior to any jury trial.

**B. Severance**

As noted above, along with their summary judgment motion, Defendants filed a motion to sever (ECF No. 23), which the magistrate judge denied without prejudice (ECF Nos. 57, 58). Federal Rule of Civil Procedure 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. After reviewing the record, on January 9, 2019, the court notified the parties that it was considering severing Plaintiffs and their claims into separate actions and ordered the parties to show cause as to why this action should not be severed. (ECF No. 78). As directed, the parties filed briefs addressing this issue. (ECF Nos. 79, 80).

Plaintiffs have chosen to bring their claims together in a single lawsuit. Federal Rule of Civil Procedure 20 addresses joinder of both plaintiffs and defendants. In regard to plaintiffs, the rule provides that:

(1) Plaintiffs. Persons may join in one action as plaintiffs if:

    (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

    (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1). The Fourth Circuit Court of Appeals has held that Rule 20 should be construed in light of its purpose: "to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Saval v. BL Ltd.*, 710 F.2d

1027, 1031 (4th Cir. 1983) (quoting *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974)). While "absolute identity of events is unnecessary," the transaction or occurrence test of the rule permits only "reasonably related claims for relief by or against different parties to be tried in a single proceeding." *Id.* Whether joinder of plaintiffs is proper under Rule 20 is a case-by-case determination committed to the sound discretion of the trial court. *Id.* In certain limited circumstances Rule 21 severance may also be justified by "considerations of judicial economy, case management, prejudice to parties, and fundamental fairness" - even where Rule 20 allows joinder. *Barber v. Am.'s Wholesale Lender*, 289 F.R.D. 364, 368 (M.D. Fla. 2013) (citations omitted).

> In determining whether severance is proper, courts consider: (1) whether the issues sought to be tried separately are significantly different from one another; (2) whether the separable issues require different witnesses and different documentary proof; (3) whether the party opposing severance will be prejudiced if it is granted; and (4) whether the party requesting severance will be prejudiced if the claims are not severed.

*Grayson Consulting, Inc. v. Cathcart*, No. 2:07-cv-02992-DCN 2014 WL 1512029, *2 (citing *Equal Rights Ctr. v. Equity Residential*, 483 F. Supp. 2d 482, 489 (D.Md. 2007)). Accordingly, a court resolving a motion to sever must answer two questions: (1) whether joinder was proper under Rule 20; and (2) whether severance is warranted under Rule 21.

Assuming arguendo that the PLRA does not prohibit multiple prisoners from bringing one action, this court still finds that the plaintiffs' joinder in one action is improper.[9] Each of

---

[9]Courts disagree as to whether it is permissible for multiple prisoner plaintiffs to join their claims together in one action. The Fourth Circuit Court of Appeals has not addressed the issue. The Eleventh Circuit has held that multiple-prisoner plaintiffs are precluded from proceeding in one action under Rule 20. *See Hubbard v. Haley*, 262 F.3d 1194, 1198 (11th Cir. 2001). However, the Third, Sixth, and Seventh Circuits have allowed multiple prisoner-plaintiffs to proceed together under Rule 20's permissive joinder rule. *See Hagan v. Rogers*, 570 F.3d 146, 152-57 (3rd Cir. 2009); *Boriboune v. Berge*, 391 F.3d 852, 856 (7th Cir. 2004); *In re Prison Litigation Reform Act*, 105 F.3d 1131, 1137-38 (6th Cir. 1997) (ordering the filing fee be divided among prisoner litigants choosing to join in suits indicating that prisoners were not barred from joining in one suit). It has been the practice in the district courts in the

13

Plaintiffs' claims are unique to that particular Plaintiff, and each claim will require individualized determinations, including inquiries relating to the nature and circumstances surrounding the alleged attacks. Additionally, there are likely to be numerous legal issues that are not common to all of the purported claims. Plaintiffs have failed to establish that their claims arise out of the same transaction, occurrence, or series of transactions or occurrences as required to meet the requirements for permissive joinder under Rule 20(a). Moreover, even if Plaintiffs could satisfy the requirements for permissive joinder, the court finds that severance of their claims is appropriate under Rule 21 in order to address concerns of fairness, prejudice, expedience, and cost. Plaintiffs seek relief for separate and distinct incidents that involve different Defendants at different times, and therefore do not arise out of the same transaction or occurrence. Accordingly, the court finds that joinder of their claims is improper, and severs Plaintiffs' claims.[10]

### IV. Conclusion

Based upon the foregoing, Defendants' Summary Judgment Motion (ECF No. 24) is **GRANTED in part and DENIED in part**. Defendants' motion for summary judgment is granted only as to Plaintiff Jabari Moore's claims brought under 42 U.S.C. § 1983. Accordingly, Plaintiff Moore's federal claims are dismissed without prejudice. Plaintiff Moore's remaining state law claims are **REMANDED** to the Court of Common Pleas of Lee County, South

---

Fourth Circuit to not allow multiple pro se prisoner-plaintiffs to proceed together in a single action. *See Griffin v. Nettles*, No. 4:18-cv-02469-RBH-TER, 2018 WL 4701293 (D.S.C. Nov. 22, 2013); *Galeas v. United States*, No. 5:14-CT-3225-F, 2015 WL 1433547, at *1 (E.D.N.C. Mar. 27, 2015); *Fleming v. Francis*, No. 5:13-CV-21991, 2014 WL 2589755, at *1 (S.D.W. Va. June 10, 2014); *Watterson v. Terrell*, No. 1:10CV184-RJC, 2010 WL 3522331, at *1 (W.D.N.C. Sept. 7, 2010); *Greene v. Phipps*, No. 7:09-cv-00100, 2009 WL 3055232, at *6 (W.D. Va. Sept. 24, 2009).

[10]Plaintiffs alternatively ask the court to delay severance until after discovery. (ECF No. 79 at 6). As noted earlier, discovery is nearly completed in this case. Accordingly, the court declines to delay severance until discovery is completed.

Carolina.

Additionally, the court finds that the remaining Plaintiffs' claims should be **SEVERED** into separate actions. Plaintiff Battle will continue under the instant civil action number. The Clerk of Court is directed to assign new civil action numbers to each of the other individual Plaintiffs.

**IT IS SO ORDERED.**

s/Timothy M. Cain  
United States District Judge

February 26, 2019  
Anderson, South Carolina

.